**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

United States of America,

            Crim. No. 07-318 (RHK/JJG)

    Plaintiff,

            **MEMORANDUM OPINION
            AND ORDER**

v.

Derrick Lashawn Smith,

    Defendant.

Michael A. Dees, Assistant United States Attorney, Minneapolis, Minnesota, for Plaintiff.

Lyonel Norris, Office of the Federal Defender, Minneapolis, Minnesota, for Defendant.

**INTRODUCTION**

  This matter is before the Court on Defendant Derrick Lashawn Smith's Objections (Doc. No. 25) to Magistrate Judge Jeanne J. Graham's November 6, 2007 Report and Recommendation ("R&R"). (Doc. No. 22.) Magistrate Judge Graham recommended that the Court deny Smith's Motion to Suppress evidence obtained from a police stop, concluding that the stop was lawful because it was based on reasonable suspicion. The Court has conducted a *de novo* review of the R&R, including the transcript of the hearing held by Magistrate Judge Graham on October 25, 2007. See 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b). Based on that review, the Court declines to adopt the R&R for the reasons set forth below.

## BACKGROUND

On April 28, 2007, at approximately 11:15 p.m., St. Paul police received numerous calls of "shots fired" near the intersection of St. Albans Street North and Central Avenue. (Tr.[1] 6, 19.) Additional calls to dispatch indicated that gunshots were fired at Dale Street between Central Avenue and St. Anthony Avenue, about a block and a half away. (Id.) One caller reported that two cars were involved, a black Buick Riviera and a white Buick Century, and stated that there were three to four black males in each car, armed with guns. (Tr. 7, 22.) St. Paul police, including Sergeant Kent Cleveland, responded to the call. (Tr. 7-9.) Officer Cleveland focused his attention on the area several blocks west of the incident, but did not locate any of the suspect vehicles. (Tr. 8-9.) He reported that the area was clear and returned to his other duties. (Id.)

About 2 1/2 hours later, at approximately 1:40 a.m., Officer Cleveland was parked on Selby Avenue, approximately one mile from the "shots fired" incident, completing some paperwork on an unrelated call. (Tr. 9, 25.) A white Buick Century passed by, with three black men inside. (Tr. 9.) Officer Cleveland noticed that the occupants in the car looked at him as they passed his squad car. (Tr. 10.) He also observed another car, a gray Kia occupied by black men, following behind the Buick. (Id.)

---

[1] "Tr." refers to the transcript of the hearing held by Magistrate Judge Graham on October 25, 2007. (See Doc. No. 24.)

Officer Cleveland followed the Buick and eventually activated his emergency lights and pulled the car over. (Tr. 11-13.) Officer Cleveland testified that the driver of the Buick obeyed all traffic laws, did not make any evasive actions, and immediately pulled over to the shoulder when his emergency lights were activated. (Id.) Officer Cleveland based the stop on the fact that the Buick matched the description of the car involved in the "shots fired" incident, and that it was relatively close to the site of that incident. As the vehicle pulled over, Officer Cleveland noticed that the front seat passenger, Defendant Smith, reached under the seat in an attempt to hide something. (Tr. 14.)

As Officer Cleveland approached the front passenger door, he noticed that the window was down, and he could smell the odor of burnt marijuana. (Tr. 16.) He asked Smith to get out of the car and put his hands on his head. (Tr. 18.) Officer Cleveland then conducted a pat-down search, during which he felt a bulge in Smith's pocket. (Id.) Smith told Officer Cleveland that the bulge was "a little weed." (Id.) Officer Cleveland found six plastic-wrapped baggies of marijuana and a large wad of cash in Smith's pocket. (Id.) He also found a handgun under the seat where Smith had been reaching. (Id.) Smith was placed under arrest and subsequently indicted for being a felon in possession of a firearm. (Doc. No. 1.)

Smith now moves to suppress the fruits of the traffic stop, arguing that Officer Cleveland did not have a reasonable suspicion to initiate the stop.

**LEGAL STANDARD**

A police officer may conduct an investigative stop only if the officer has a reasonable suspicion that the vehicle or its occupants are involved in criminal activity. Terry v. Ohio, 392 U.S. 1, 30 (1968); United States v. Bell, 480 F.3d 860, 863 (8th Cir. 2007).  The police officer must have "a particularized and objective basis" for suspecting criminal activity.  Bell, 480 F.3d at 863 (quoting United States v. Jacobsen, 391 F.3d 904, 906 (8th Cir. 2004)). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances."  Id. (quoting United States v. Maltais, 403 F.3d 550, 554 (8th Cir. 2005)).  Reasonable suspicion may be based on an anonymous tip so long as the tip is both reliable and corroborated.  Alabama v. White, 496 U.S. 325, 330-32 (1990).  "Whether an anonymous tip suffices to give rise to reasonable suspicion depends on both the quantity of information it conveys as well as the quality, or degree of reliability, of that information, viewed under the totality of the circumstances."  United States v. Wheat, 278 F.3d 722, 726 (8th Cir. 2001) (citing White, 496 U.S. at 330).

**ANALYSIS**

**I.    Reasonable Suspicion to Initiate a Stop**

The key question before the Court is whether an anonymous tip that described three black males, allegedly armed, riding in a white Buick Century provides sufficient indicia of reliability to justify the investigative stop by Officer Cleveland when viewed under the totality of the circumstances presented here.  In Florida v. J.L., 529 U.S. 266

(2000), the United States Supreme Court considered whether an anonymous tip that described a person carrying a gun was sufficient to justify an investigatory stop-and-frisk by police. An anonymous caller had reported that a young black male wearing a plaid shirt and standing at a particular bus stop was carrying a gun. Id. at 268, 271. Police officers responded to the call and spotted a young black male in a plaid shirt at the designated bus stop. Id. at 268. The police officers, however, saw no gun and had no other reason to suspect the individual or his companions of illegal conduct. Id. Nevertheless, they stopped and frisked him, seizing a gun. Id.

The Supreme Court unanimously held that the stop-and-frisk was unconstitutional because "the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about" the suspect lacked sufficient indicia of reliability to justify an investigative stop-and-frisk. Id. at 271. Notably, the Court expressly rejected the argument that the officers' confirmation of the suspect's visual attributes provided sufficient corroboration of the tip. Id. at 271-72.[2] The Court reasoned that reasonable suspicion "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." Id. at 272.

---

[2] The Court also rejected the argument that the threshold of reliability to uphold an investigative stop based on an anonymous tip can be modified by the allegation that the suspect is armed. See 529 U.S. at 272 (reasoning that, despite concerns for public safety, "[s]uch an exception would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call falsely reporting the target's unlawful carriage of a gun").

Here, Officer Cleveland based his reasonable suspicion on an anonymous tip that merely provided a generic description of the suspects – three armed black males – and a generic description of their vehicle – a white Buick Century. There was no further description of the vehicles' occupants, no license plate information or other distinguishing features of the car, and no information on which direction the car was traveling. Indeed, the police did not find any of the alleged vehicles in the area immediately after receiving the anonymous tip. In addition, Officer Cleveland spotted a white Buick Century 2 1/2 hours after the anonymous tip was received and about one mile from the reported incident. Notably, the driver did not violate any traffic laws and did not make any evasive maneuvers after Officer Cleveland began tailing the vehicle. Lastly, the fact that Officer Cleveland noticed that the occupants in the Buick looked at him as they passed his squad car or looked at him when he was tailing them is not enough to support a reasonable suspicion. See United States v. Peters, 10 F.3d 1517, 1522 (10th Cir. 1993) (passenger's "sideways glances" at passing police car "are simply insufficient to support a reasonable suspicion"). Accordingly, the anonymous tip in this case failed to give rise to a reasonable suspicion when viewed under the totality of the circumstances.

Nonetheless, the Government argues that if there is a sufficient relationship between the description of a suspect and the time and place where the suspect is found, then a police officer may have a reasonable suspicion. The Government relies primarily on two decisions from the Eighth Circuit for support of its position. In United States v. Juvenile TK, 134 F.3d 899 (8th Cir. 1998), police officers received two dispatches about a man who broke a car window and later robbed a gas station. *Minutes after the robbery*,

6

officers saw a gray car make a u-turn about *1 1/2 to 2 blocks* from the gas station. Id. at 901. The officers followed the gray car in their marked squad car, activated their red lights, and felt that the driver of the car made an evasive action by making a quick turn and accelerating before finally pulling the vehicle to the side of the road. Id. The Eighth Circuit upheld the stop and reasoned that, even though the officers only had a generic description, the officers had spotted the gray car no more than two blocks away from the scene of the robbery and within five minutes of the second dispatch. Id. at 904.

In United States v. Hurt, 376 F.3d 789 (8th Cir. 2004), police officers were conducting surveillance at a company that distributed anhydrous ammonia (a precursor chemical for making methamphetamine) and arrested two individuals who were attempting to steal the chemical from a tank. Id. at 790. About two hours later, another officer arrived at the scene of the incident. Id. at 791. That officer noticed a vehicle approach the site of the attempted theft, slow down unexpectedly, speed up and continue down the road. Id. In the officer's experience, he noted that "it was common for anhydrous ammonia thieves to be dropped off in rural areas where these tanks exist and to be picked up later after the theft occurred." Id. The officer pursued the car, checked the license plate number, and learned that the car was registered to a neighbor of one of the suspects in the theft. Id. Based on this information, the officer stopped the car. Id.

The Eighth Circuit held that the officer had reasonable suspicion to stop the vehicle, even though two hours had passed since the theft occurred. Id. at 792. The court reasoned that the officer expected the driver to return to pick up the other participants in the attempted theft since the driver did not know that the others had been arrested earlier.

Id. The court also found that other factors supported the officer's reasonable suspicion, namely that the approaching vehicle (1) "slowed to the point where it appeared that it was going to turn onto the property, and then sped up and left the area when it reached the point where its driver could see the headlights of the detective's car" and (2) was registered to a suspect that the officer was looking for. Id.

These cases are easily distinguishable from the case at bar. Here, Officer Cleveland merely had a generic description of the suspects and the vehicle; he had no other corroborating information as in Hurt. Furthermore, the vehicle's temporal and geographic proximity were much further removed than in Juvenile TK and Hunt. Indeed, Officer Cleveland spotted the white Buick 2 1/2 hours after the "shots fired" incident and approximately ten to twelve blocks from the scene of the reported incident. By contrast, in Juvenile TK, the officers spotted a suspicious vehicle *minutes after the robbery* and only *1 1/2 to 2 blocks* from the robbery, while in Hurt the vehicle was at the actual crime scene. Furthermore, unlike the driver of the vehicle in Juvenile TK, the driver of the Buick in this case did not make any evasive actions.

## CONCLUSION

Officer Cleveland spotted a white Buick Century occupied by three African-American males almost 2 1/2 hours after the "shots fired" incident and nearly one mile from the scene. Officer Cleveland's "reasonable suspicion cannot be, however, just a mere hunch or based on circumstances which 'describe a very large category of presumably innocent travelers.'" United States v. Jones, 269 F.3d 919, 927 (8th Cir. 2001) (citation omitted)). Yet, that is all that is here. The information that had been

8

provided to Officer Cleveland came from an unidentified caller who did not provide any further distinguishing features of the car, such as a partial license plate or a dent, or its occupants. Indeed, Officer Cleveland testified that "a large percentage" of African-Americans live in the area and that it was not unusual to see cars with African-American males driving around at that time of night. (Tr. 23-24.) Based on the totality of the circumstances in this case, the Court concludes that Officer Cleveland did not have a reasonable suspicion to justify an investigative stop. Accordingly, the evidence gathered against Smith as a result of the traffic stop must be excluded.

Based on the foregoing, and all the files, records and proceedings herein, **IT IS ORDERED** that:

1. Defendant's Objections (Doc. No. 25) to the R&R are **SUSTAINED**; and
2. Defendant's Motion to Suppress (Doc. No. 16) is **GRANTED**.

Dated: December  17 , 2007

                                          s/Richard H. Kyle
                                          RICHARD H. KYLE
                                          United States District Judge